T.C. Memo. 1999-425

UNITED STATES TAX COURT

THOMAS F. AND THERESE GROJEAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14374-98.                    Filed December 29, 1999.

P organized A to acquire 100 percent of the stock
of S.  To finance the purchase, A and S borrowed $13.2
million from the bank, and A and S signed a promissory
note in favor of the bank (the note).  P was not a
party to the note.  P contemporaneously borrowed $1.2
million from the bank and signed a note in favor of the
bank (P note), and P used the funds to purchase a $1.2-
million participation interest in the note.  The note
and the P note had identical terms, and the bank
automatically credited amounts due under the P note
with amounts due P for his participation interest.  No
cash changed hands, and all funds were electronically
credited at the bank.  In calculating his allowable
distributive share of S losses for 1989, 1990, and
1991, P included in his basis $1.2 million for his
participation share.  <u>Held</u>: In substance P functioned
as a guarantor of $1.2 million of the note, and P is
not entitled to include in his S basis the $1.2 million
participation interest.  P did not make the requisite

cash outlay, and there was no direct obligation between P and S.  Held, further, P's are liable for the addition to tax for filing untimely their returns.

Edward J. Hannon and Arthur M. Holtzman (specially recognized), for petitioners.

William T. Derick, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Respondent determined the following deficiencies in petitioners' 1989 through 1991 Federal income tax and additions thereto:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) |
|------|-----------|----------------------------------|
| 1989 | $115,471 | $11,547 |
| 1990 | 176,382 | 8,819 |
| 1991 | 11,570 | – |

After concessions, we decide the following issues:

1. Whether petitioner's basis in his S corporation stock under section 1366(d) includes his participation interest in a loan between a bank and his S corporation.  We hold it does not.

2.  Whether petitioners are liable for the additions to tax determined by respondent.  We hold they are.

Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code as applicable to the years in issue.  Singular references to petitioner are to Thomas F. Grojean.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioner and Therese Grojean are husband and wife, and they resided in Anderson, Indiana, when they filed their petition in this case.

Petitioner graduated from the University of Notre Dame in 1960 with a B.S. in accounting. After college, he worked at Price Waterhouse as a certified public accountant. From 1968 through 1984, he was employed by Flying Tigers, an all-cargo airline, where he was the chief financial officer and later the chief operating officer. In 1984, he left Flying Tigers to acquire interests in several trucking companies. American National Bank and Trust Company of Chicago (American) financed the acquisitions.

As of 1989, Transamerica Leasing Company (Transamerica) owned all the stock of Schanno Transportation, Inc. (Schanno), a trucking company. Sometime prior to July 13, 1989, petitioner and Transamerica entered negotiations for petitioner's possible purchase of Schanno. During these negotiations, petitioner contacted American to discuss financing for the purchase. In August 1989, petitioner formed and became the sole shareholder of Schanno Acquisition, Inc. (Schanno Acquisition), which he formed for the purpose of acquiring Schanno. The plan was for Schanno

Acquisition to merge with and into Schanno immediately after the purchase.

American agreed to lend $11 million to Schanno Acquisition to finance the acquisition of Schanno if petitioner would guarantee all loans personally. Petitioner was unwilling to undertake that risk, and the parties continued negotiations.

On September 6, 1989, Schanno Acquisition executed a stock purchase agreement (purchase agreement) wherein Schanno Acquisition agreed to purchase all the stock of Schanno from Transamerica for $13.9 million. On the same date, American, Schanno Acquisition, Schanno, and petitioner entered into a comprehensive loan agreement (loan agreement) in which American agreed to provide the following three loans to facilitate the purchase: (1) An $8.4-million loan to Schanno Acquisition and Schanno (Schanno note), (2) a $2.6-million revolving credit loan to Schanno Acquisition and Schanno (credit note), and (3) a $1.2-million loan to petitioner (Grojean note).

The loan agreement provided:

> (b) As a condition to [American's] obligations to make the initial disbursements under the loans described herein, the following conditions shall have occurred and been approved to [American's] reasonable satisfaction:
>
>    *    *    *    *    *    *    *
>
> (iii) [American] and [petitioner] have

entered into and delivered the Participation Agreement and [petitioner] has purchased, or will contemporaneously purchase, a portion of [American's] interest in the [Schanno note] in the amount of One Million Two Hundred Thousand ($1,200,000) Dollars.

Pursuant to the loan agreement, American disbursed to Schanno Acquisition $8.4 million and $2.6 million under the Schanno note and the credit note, respectively. Both Schanno Acquisition and Schanno signed the Schanno note and the credit note, and both notes identified Schanno Acquisition and Schanno as the borrowers or "makers". American was the only party identified as the lender on the Schanno note and the credit note, and petitioner was not a party to these notes. Both loans were secured by all the assets of Schanno. Transamerica financed the remainder of the purchase price, taking back a note from Schanno Acquisition and Schanno for $2.9 million (Transamerica loan).

Also on September 6, 1989, American advanced $1.2 million to petitioner under the Grojean note by crediting this amount to petitioner's checking account at American. Petitioner pledged his stock in Schanno and Schanno Acquisition as security for the loan. Contemporaneous with execution of the Grojean note, petitioner and American entered into a participation agreement wherein petitioner agreed to purchase a $1.2-million

participation interest in the Schanno note.[1]  As pertinent, the
participation agreement provided:

> American hereby sells and Participant hereby
> purchases a participation in the *** [Schanno note], a
> copy of which is attached hereto and made a part hereof
> as Exhibit "A".  The purchase price is $1,200,000 and
> shall be paid to American upon the execution of this
> Agreement by Participant and American.

To cover the purchase price, American debited petitioner's
checking account for $1.2 million.

The Schanno note and the Grojean note each had identical
interest rates and were both 6-year notes with a due date of
September 1, 1995.  The Schanno note called for monthly payments
of principal, whereas the Grojean note did not require payment of
principal until the September 1, 1995, due date.  Both notes
called for monthly interest payments.

The participation agreement provided that American's
interest in the Schanno note was superior to petitioner's
participation interest.  Petitioner became entitled to monthly
interest payments only upon payment of the interest by Schanno to
American under the Schanno note.  When American received a
monthly payment on the Schanno note, American credited
petitioner's participating share to petitioner's checking account

---

[1]Petitioner's offered rationale for this structure was that
he believed this would enable him to attain the same secured
status as American, whose security interest was superior to
Transamerica's.

and contemporaneously debited the account for the interest payments due under the Grojean note. Petitioner was not entitled to participate in any of the principal on the Schanno note until American recovered its full share of principal. After American recovered its entire principal on the Schanno note, petitioner became entitled to his share of principal as a credit against the principal due on the Grojean note.

American had sole authority and discretion to exercise its rights under the Schanno note without the advice or consent of petitioner, including authority to do all of the following: (1) Alter or modify the Schanno note or collateral agreement; (2) release, substitute, or exchange collateral; (3) waive any enforcement of any contractual terms against the borrower; or (4) forbear from collection. American issued to petitioner a participation certificate evidencing petitioner's ownership of a $1.2 million participation interest in the Schanno note. After execution of the foregoing transactions, on September 6, 1989, Schanno Acquisition merged with and into Schanno, leaving Schanno as the surviving entity and petitioner as the sole shareholder.

In October 1989, petitioner and American restructured the Grojean note and the participation agreement by reducing the Grojean note to $1 million and reducing petitioner's

participating interest in the Schanno note to $1 million. At the same time, petitioner signed a $200,000 revolving credit note (Grojean credit note), keeping the total amount he received in the form of a loan at $1.2 million. Petitioner then purchased a $200,000-participation interest in the credit note. Petitioner and American amended the participation agreement to reflect this purchase.[2] The Grojean credit note had the same interest rate and other terms as the credit note, and petitioner became entitled to payments for his participation interest only when American received payments under the credit note. American's share of the credit note was superior to petitioner's $200,000 share. American and petitioner amended other related documents as well to incorporate these changes, including the loan agreement and the stock pledge and security agreement. American had sole and absolute discretion to exercise any rights under the credit note, without advice or consent from petitioner. American debited and credited interest payments to and from petitioner's checking account under the credit note and the Grojean credit note as Schanno paid the amounts due under the Schanno note and the credit note.

For 1989, 1990, and 1991, American credited petitioner's checking account with interest income relating to his participation interests in the Schanno note and the credit note

_____

[2]The record does not indicate whether American issued a participation certificate to petitioner for his interest in the credit note.

in the amounts of $31,875, $131,425, and $114,675, respectively. For the same years, American debited interest payments due from petitioner under the Grojean note and the Grojean credit note from petitioner's checking account for identical amounts, with the net effect to petitioner for all years being a wash.

As a condition of receiving their loans, Schanno, Schanno Acquisition, and petitioner were required to give American annual financial statements of Schanno that were audited and certified by an independent accounting firm.  In the certified financial statements that were prepared by the accounting firm for 1989, 1990, and 1991, Schanno reported that petitioner's participation interest was a $1.2-million guaranty of the corporation's $8.4 million loan and $2.6 million revolving credit loan.

On his 1989, 1990, and 1991 Federal income tax returns, petitioner claimed passthrough ordinary losses from Schanno in the amounts of $1,186,375, $9,389, and $28,273, respectively. Petitioners also claimed petitioner's share of a net operating loss carryforward from Schanno from 1989 to 1990 in the amount of $591,245.  In applying the basis limitation under section 1366(d), he included in his basis $1.2 million representing his participation interests in the Schanno note and the credit note. Respondent disallowed the inclusion of that amount in petitioner's basis computation and determined that petitioner did not have sufficient basis in his Schanno stock to allow for the

claimed losses.  Respondent disallowed the losses in full and made other computational adjustments resulting from this determination.

Petitioners' 1989 and 1990 Federal income tax returns were due, with extensions, on October 15, 1990, and August 15, 1991, respectively.  Petitioners filed those returns on December 13, 1990, and September 5, 1991, respectively.

OPINION

We decide whether petitioner may increase his basis in Schanno under section 1366(d) by the $1.2 million purchase price of his participation interests in the Schanno note and the Schanno credit note.  Respondent argues that petitioner received no basis on account of his participation interests because the Grojean note and the Grojean credit note were disguised guaranties, and petitioner did not make the requisite economic outlay.  Alternatively, respondent argues that the Grojean note and the credit note were an integral part of interrelated transactions having no independent economic substance.  We agree with respondent that petitioner functioned as if he were a guarantor of Schanno's indebtedness to American, and petitioner is not entitled to a basis increase for the guaranty.

Section 1366(a) requires a taxpayer to take into account the pro rata share of income, losses, and deductions of an S corporation of which the taxpayer is a shareholder.  The losses

and deductions taken into account are limited by section 1366(d) as follows:

> (d) Special Rules for Losses and Deductions.--
>
> (1) Cannot exceed shareholder's basis in stock and debt.--The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of-
>
> > (A) the adjusted basis of the shareholder's stock in the S corporation * * *, and
> >
> > (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder * * *.

Any S corporation loss that exceeds a taxpayer's adjusted basis in his or her stock and debt is carried over indefinitely to the succeeding years. See sec. 1366(d)(2).

Prior cases have established certain principles in respect of the application of the indebtedness limitation under section 1366(d)(1)(B). First, a taxpayer must make an actual economic outlay. See Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975); Hitchins v. Commissioner, 103 T.C. 711 (1994). Second, the S corporation's indebtedness must run directly to the shareholder; an indebtedness to a passthrough entity that advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements. See Frankel v. Commissioner, 61 T.C. 343 (1973), affd. without published opinion 506 F.2d 1051 (3d Cir. 1974); Prashker v.

Commissioner, 59 T.C. 172 (1972).

To make an economic outlay, the shareholder must be left poorer in a material sense after the transaction has been fully consummated.  See Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. per order (8th Cir., May 12, 1971).  A shareholder does not acquire basis by acting as guarantor, surety, or accommodation party with respect to his corporation's borrowing from a third party until the shareholder pays part or all of the obligation.  See Brown v. Commissioner, 706 F.2d 755, 757 (6th Cir. 1983), affg. T.C. Memo 1981-608; Estate of Leavitt v. Commissioner, 90 T.C. 206, 211 (1988), affd. 875 F.2d 420 (4th Cir. 1989); Underwood v. Commissioner, 63 T.C. at 468-469; Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968); Perry v. Commissioner, 47 T.C. 159 (1966), affd. 392 F.2d 458 (8th Cir. 1968).

Here, the interrelated transactions show petitioner was in substance a guarantor of the indebtedness between Schanno and American.  The effect of all the transactions was that petitioner would not be out-of-pocket unless and until Schanno failed to make payments under the Schanno note or the credit note.  The substance of a transaction will control over its form.  See Gregory v. Helvering, 293 U.S. 465, 469-470 (1935); Spencer v. Commissioner, 110 T.C. 62 (1998).

Petitioner acquired the $1.2 million to purchase the

participation interest by virtue of the following circular transaction with American: (1) Petitioner borrowed $1.2 million from American, and petitioner signed the Grojean note; (2) petitioner returned the $1.2 million to American; (3) American gave petitioner a participation certificate evidencing a $1.2 million participation interest in the Schanno note. No cash changed hands, and American handled the transaction through simultaneous electronic debits and credits. When the parties amended the arrangement to include a participation interest in the credit note, it was handled similarly with no cash changing hands.

The Schanno note and the credit note were the mirror images of the Grojean note and the Grojean credit note, respectively. When American received a monthly payment on the Schanno note or the credit note, American credited petitioner's participating share to petitioner's checking account and contemporaneously debited the account for the interest payments due under the Grojean note and the Grojean credit note. Once American recovered its principal on both notes, petitioner's share of principal was to be credited against the principal due on the Grojean note and the Grojean credit note. Payments by Schanno on the Schanno note and the credit note kept petitioner current on the Grojean note and the Grojean credit note. Like a guarantor, petitioner would not be liable--thus not called upon to make an

economic outlay--unless Schanno defaulted.  This conclusion is consistent with the treatment of the participations in Schanno's certified financial statements.  Those statements, which were certified as correct by the independent accounting firm and which were reviewed by petitioner, disclosed the participations as a guaranty by petitioner of the debt between American and Schanno.

In Underwood v. Commissioner, supra, we held that the taxpayer's series of interrelated transactions was tantamount to a disguised guaranty of an S corporation's indebtedness to a third party.  In that case, the taxpayers were the sole shareholders of two corporations engaged in the retail barbecue business, one a profitable C corporation (C-corp), the other an unprofitable S corporation (S-corp).  The C-corp made loans to the S-corp over nearly a 2-year period.  The S-corp gave the C-corp promissory notes for the loans.  In an attempt to acquire additional S-corp basis, the taxpayers rearranged the notes in three steps:  (1) The C-corp surrendered the notes of the S-corp; (2) one of the taxpayers gave a personal note to the C-corp; and (3) the S-corp gave its note to that taxpayer.  We held that the taxpayer did not make the requisite economic outlay and that the substance of the arrangement was similar to a guaranty of the indebtedness.  See Underwood v. Commissioner, supra at 475; see also Estate of Leavitt v. Commissioner, 90 T.C. 206 (1988), affd. 875 F.2d 420 (4th Cir. 1989).  Likewise here, we find the

substance of the transactions to be a shareholder's guaranty of the indebtedness of an S corporation.

Petitioner argues that there was bona fide indebtedness between himself and American, and that his relending of the funds to Schanno by way of purchasing a participation interest entitles him to adjusted basis. Petitioner relies on <u>Raynor v. Commissioner</u>, 50 T.C. 762 (1968), for the proposition that when a shareholder borrows funds from a third party and lends those funds to his or her S corporation, he is entitled to basis. Petitioner's reliance is misplaced, and the fact that there was bona fide indebtedness between American and petitioner is not significant because petitioner did not relend the funds directly to Schanno. The statutory language makes clear the shareholder will get basis only in "indebtedness <u>of</u> the S corporation <u>to</u> the shareholder". Sec. 1366(d)(1)(B) (emphasis added). This requires a direct obligation between the shareholder and the S corporation. See <u>Hitchins v. Commissioner</u>, <u>supra</u>. Such is not the case here.

The participation agreement makes clear that petitioner did not become a lender to or creditor of Schanno. There was no note or other contract between petitioner and Schanno, and petitioner was not a party to the Schanno note or the credit note. American had sole discretion to enforce all rights under the notes, without the advice or consent of petitioner. Petitioner's

contractual relationship was with American.  Petitioner advanced the funds to American which, in turn, advanced the funds to Schanno.  If Schanno failed to pay, petitioner had no direct contractual rights against Schanno.  There was no "direct obligation" from Schanno to petitioner.  See Hitchins v. Commissioner, supra.  Whatever rights petitioner had against Schanno, if any, were derivative through American, and such derivative rights are insufficient to give petitioner basis. See id.

We also do not find helpful to petitioner's cause the testimony of petitioner's expert witness, Steven L. Harris.  We recognized Harris as an expert on bankruptcy and creditor's rights, and petitioner proffered his testimony to establish that petitioner had economic and business reasons for structuring the transaction as a participation as opposed to a direct loan. Harris opined that petitioner would enjoy a greater status as a participant in the event Schanno went bankrupt.  Harris' testimony, however, fully supports our conclusion that there was no direct obligation between petitioner and Schanno for basis purposes, as he testified on cross-examination as to what petitioner's rights would be if Schanno filed bankruptcy:

> Q:  The lead bank would be the holder of the claim?
> A:  The lead bank typically would be the holder of the claim in the bankruptcy.
> Q:  And so if a proof of claim was filed, it would be under the lead bank's name, not the participant's name.

Right?
A: Yes.
Q: Okay. And--I didn't mean to interrupt. Go ahead.
A: Yes. In addition, it is the lead bank who is
enforcing the obligation in a participation agreement--
Q: And is that because the participant has no rights
to enforce that obligation?
A: Yes.

Petitioner's reliance on Gilday v. Commissioner, T.C. Memo. 1982-242, is also misplaced. In Gilday, the bank held the note of an S corporation. The taxpayer and other shareholders of the S corporation issued their note to the bank, and the bank canceled the S corporation's note. In exchange, the S corporation gave its note, in the same amount, to the shareholders. The result was that the shareholders became the sole obligors to the bank, and the S corporation was directly indebted to the shareholders. We held the shareholders had a basis in the debt for purposes of former section 1374(c), the predecessor of section 1366(d).[3] That was not the case here. Schanno was not directly indebted to petitioner in any way, and petitioner's rights were against American, not Schanno. Because the notes from the corporation to the bank were the mirror image

---

[3]We recognize that in Gilday v. Commissioner, T.C. Memo. 1982-242, the shareholders of the S corporation did not make an actual outlay of funds. However, our holding in Gilday is that the substitution of the shareholders as the sole unconditional obligors to the bank and of the S corporation as the sole unconditional debtor to the shareholders constituted a constructive furnishing by the shareholders of the funds previously loaned by the third party bank. See also Hitchins v. Commissioner, 103 T.C. 711 (1994).

of his notes to the bank, there was complete circularity of funds, and his status was in substance not that of the corporation's creditor but of guarantor of the corporation's debt to the bank.

We hold petitioner is not entitled to basis under section 1366(d) for his participation interests in the Schanno note and the credit note totaling $1.2 million.

We turn to the additions to tax for failure to file timely. Section 6651(a)(1) reads in pertinent part:

> In case of failure * * * to file any return * * * on
> the date prescribed therefor * * *, unless it is shown
> that such failure is due to reasonable cause and not
> due to willful neglect, there shall be added to the
> amount required to be shown as tax on such return 5
> percent of the amount of such tax if the failure is for
> not more than 1 month, with an additional 5 percent for
> each additional month or fraction thereof during which
> such failure continues, not exceeding 25 percent in the
> aggregate.

To escape the addition to tax for filing the 1989 and 1990 returns untimely, petitioners must prove that (1) their failure to file timely did not result from willful neglect, and (2) this failure was due to reasonable cause. On brief, respondent proposed the following finding of fact: "Petitioners failed to file timely income tax returns for 1989 and 1990, and their failure was due to willful neglect and not due to reasonable cause." Petitioners did not object to this proposed finding of fact, nor did they proffer any evidence that would suggest that reasonable cause existed. We hold petitioners are liable for the additions to tax under section 6651(a)(1) as determined by

respondent.

We have considered all arguments made by petitioners for holdings contrary to those herein, and, to the extent not addressed above, find them to be irrelevant or without merit. Due to concessions of the parties,

<u>Decision will be entered under Rule 155.</u>